UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **JACK SHELTON, III** | **CIVIL ACTION** |
| **VERSUS** | **NO. 07-6030** |
| **THE STANDARD INSURANCE COMPANY** | **SECTION: "C" (4)** |

## ORDER AND REASONS

Before the Court is a Motion for Partial Summary Judgment, filed by the plaintiff, Jack Shelton, III ("Shelton") (Rec. Doc. 18). The defendant, the Standard Insurance Company ("Standard"), opposes the motion. The motion is before the court on the briefs without oral argument. Having considered the memoranda and arguments of counsel, the record and the applicable law, the motion is **GRANTED**.

## I. BACKGROUND

In 1996, Shelton worked for a law firm and enrolled as a participant in an employee welfare benefit plan. The plan was governed by the Employee Retirement Income Security Act of 1974 ("ERISA") because it was established and maintained by Shelton's employer to provide benefits to the employees.[1] Standard notes that Shelton's employer participated as a member of

---

[1] The parties do not dispute that the benefit plan met ERISA's definition of "employee welfare benefit plan" as described in 29 U.S.C. § 1002(1). In relevant part, the statute provides,

1

a group policy plan issued by Standard to the Standard Select Trust. Thus, Shelton was insured through his employer by a group plan. In 2002, Shelton's employment ended when his employer, a law firm, closed. At that time, Shelton exercised his option, pursuant to the terms of the employee welfare benefit plan, to purchase a "conversion policy." In August of 2007, Shelton filed a lawsuit against Standard in state court seeking disability benefits from July 2004 to July 2007. Standard removed the case to federal court, alleging diversity and federal question jurisdiction. Rec. Doc. 1, Notice of Removal.

The parties do not dispute that Shelton paid all premiums for the conversion policy directly to Standard. However, Standard contests whether Shelton's former employer had responsibility for administering the LTD policy. In addition, Standard strenuously contests Shelton's claim that the "conversion policy" was an individual policy. Standard asserts that Shelton was insured under a "rider" to the original group policy and that the conversion policy cannot be characterized as an "individual policy." Indeed, Standard's argument focuses on the fact that Standard never issued a policy directly to Shelton, but merely insured Shelton under a rider to the original policy. Essentially, Standard argues that because ERISA governed the original plan, ERISA also controls Shelton's "conversion policy." Finally, Standard argues that there is no factual basis for Shelton's claims that he became disabled in 2003, after he purchased

> The terms "employee welfare benefit plan" and "welfare plan" mean any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability . . . .

the conversion policy and his employment with the firm that established the welfare benefit plan terminated.

Shelton relies on *Owens v. UNUM Life Ins. Co.*, 285 F.Supp.2d 778 (E.D.Tex. 2003) and *Demars v. CIGNA Corp.*, 173 F.3d 443 (1st Cir. 1999) for the proposition that conversion policies are not "employee welfare benefit plans" as defined by ERISA, and thus, ERISA preemption cannot apply to benefit claims brought pursuant to the terms of his conversion policy. The facts of *Owens* align closely with this case: "Owens' employer, Smith Barney, provided him a long-term disability insurance policy underwritten by UNUM." Owens, 285 F.Supp.2d at 779. After Owens left his job at Smith Barney, he exercised his right under the policy to convert his employer provided long-term disability policy to an individual long-term disability policy with UNUM. *Id.* at 779-80. Eleven years after he converted to an individual plan, Owens submitted a claim to UNUM for disability benefits; UNUM denied the claim. *Id.* at 780.

In *Owens*, the district court noted that the Fifth Circuit had not directly addressed the issue of ERISA preemption regarding conversion policies. The *Owens* court adopted the reasoning of the First Circuit in *Demars* as most analogous to the Fifth Circuit's cases regarding the interpretation of ERISA's Safe Harbor test for determining whether ERISA applies to insurance policies.[2] *Owens* 285 F.Supp.2d at 781-82 (citing *McNeil v. Time Ins. Co.*, 205 F.3d 179, 190 (5th Cir. 2000). On that basis, the *Owens* court held that the conversion policy at issue was neither established nor maintained by the former employer; indeed, the court found that there was little evidence supporting the characterization of the conversion policy as an

---

[2] The Safe Harbor is discussed below.

3

"employee welfare benefit plan" subject to ERISA. *Id.* at 783-84.

In contrast, Standard argues that *Owens* is factually distinguishable. Standard relies on *Levine v. Transamerica Life Companies*, 2001 WL 333119 (E.D.La. April 5, 2001) and *Painter v. Golden Rule Ins. Co.*, 121 F.3d 436 (8th Cir. 1997) to argue that ERISA preemption applies to the conversion policy. Importantly, Standard disputes Shelton's claim that he is an individual policy owner. Standard asserts that Shelton is insured pursuant to a long-term disability conversion certificate under a group policy number. Standard avers that the conversion certificate is merely a rider to the group policy. Finally, Standard argues that Shelton has not provided sufficient summary judgment evidence to support his motion.

### III. LAW & ANALYSIS

#### 1. Standard of Review

Summary judgment is only proper when the record indicates that there is not a "genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. A genuine issue of fact exists only if the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc*., 477 U.S. 242, 247-48 (1986); *see also Taita Chem. Co. v. Westlake Styrene Corp*., 246 F.3d 377, 385 (5th Cir. 2001). When considering a motion for summary judgment, this Court "will review the facts drawing all inferences most favorable to the party opposing the motion." *Reid v. State Farm Mut. Auto Ins. Co.*, 784 F.2d 577, 578 (5th Cir.1986).

The party moving for summary judgment bears the initial burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986). Once the moving party has met its initial burden, however, "the burden shifts to the non-moving party to produce evidence or designate specific facts showing the existence of a genuine issue for trial." *Engstrom v. First Nat'l Bank of Eagle Lake*, 47 F.3d 1459, 1462 (5th Cir. 1995). In order to satisfy its burden, the non-moving party must put forth competent evidence and cannot rely on "unsubstantiated assertions" and "conclusory allegations." *See e.g., Hopper v. Frank*, 16 F.3d 92 (5th Cir.1994); *Lujan v. Nat'l. Wildlife Fed'n.*, 497 U.S. 871, 884-85 (1990); *Donaghey v. Ocean Drilling & Exploration Co.*, 974 F.2d 646, 649-51 (5th Cir. 1992).

### 2. Does ERISA apply to the Conversion Policy?

The analysis begins with the statutory text: ERISA preempts any state law that "relate[s] to any employee benefit plan." 29 U.S.C. § 1144(a).[3] Yet, "infinite relations cannot be the measure of pre-emption." *Demars v. Cigna Corp.*, 173 F.3d 443, 445 (1st Cir. 1999) (quoting *New York State Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 656 (1995)). As noted in *Owens*, the Fifth Circuit has not addressed the boundaries of

---

[3] ERISA's preemption provision must be read in conjunction with the statutory definition of an "employee welfare benefit plan," defined as:

> any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that such plan, fund, or program was established or is maintained for the purpose of providing for its participants or their beneficiaries, through the purchase of insurance or otherwise, (A) medical, surgical, or hospital care or benefits, or benefits in the event of sickness, accident, disability, death or unemployment, or vacation benefits, apprenticeship or other training programs, or day care centers, scholarship funds, or prepaid legal services, or (B) any benefit described in section 186(c) of this title (other than pensions on retirement or death, and insurance to provide such pensions).

29 U.S.C. § 1002(1).

ERISA preemption in relation to conversion policies. *Owens*, 285 F.Supp.2d at 781. However, the First Circuit has stated "[t]he proper question to ask under § 1144(a) is not whether [the] claims relate to [a] conversion policy, which relates in turn to an ERISA plan, but rather whether the conversion policy is itself subject to ERISA regulation as an ERISA plan."[4] *Demars*, 173 F.3d at 445.

Accordingly, this Court must determine whether the "conversion policy" in this matter satisfies the statutory definition of an ERISA plan subject to preemption. The Fifth Circuit has developed a three (3) part test to determine whether a particular benefit plan meets ERISA's definition of an "employee welfare benefit plan." First, the plan must exist; second, the plan must be established or maintained by an employer for the purpose of benefitting the plan participants; and third, the plan cannot fall into the Department of Labor's "safe harbor" exclusion. *Owens*, 285 F.Supp.2d at 781 (citing *McNeil v. Time Ins. Co.*, 205 F.3d 179, 189 (5th Cir. 2000)).

The Court will not address the first prong: there is no dispute that the conversion policy exists. The second prong of the Fifth Circuit test is a mere re-statement of the definition contained in the statute. Fortunately, the Fifth Circuit provides additional guidance:

> To determine whether an employer established or maintained an employee benefit plan, the court should [focus] on the employer ... and [its] involvement with the administration of the plan. We have stated that the purchase [of insurance] is evidence of the establishment of a plan, fund, or program and that the purchase of

---

[4] In *Levine v. Transamerica Life Companies*, 2001 WL 333119, at *2 (E.D.La. 2001), the court framed the issue by asking: "does an individual conversion policy remain governed by ERISA merely because of its historical ties to an ERISA group policy?" The Court notes Standard's argument that this case does not involve an "individual" policy because Shelton is insured pursuant to a rider. This issue is addressed below, in relation to the Department of Labor's safe-harbor regulation.

>a policy or multiple policies covering a class of employees offers substantial evidence that a plan, fund, or program has been established. However, we have consistently held that if an employer does no more than purchase insurance for its employees and has no further involvement with the collection of premiums, administration of the policy, or submission of claims, the employer has not established an ERISA plan.

*Shearer v. Southwest Service Life Ins. Co.*, 516 F.3d 276, 279 (5th Cir. 2008) (internal quotations and citations omitted). Focusing on Shelton's former employer, one could argue that the employer "established" the conversion policy because Shelton had the right to convert the policy under the employer sponsored plan. On the other hand, Shelton independently and voluntarily chose to establish insurance under the conversion policy following termination of his employment.[5]

The Court finds several key facts determinative to the establishment and maintenance of Shelton's conversion policy. First, Shelton voluntarily exercised his option to insure through the conversion policy; second, Shelton paid all of the premiums thereafter directly to Standard. Rec. Doc. 18, Statement of Uncontested Facts. Additionally, there is no evidence that Shelton's former employer had "further involvement with the collection of premiums, administration of the policy, or submission of claims" because the former employer, a law firm, was closed. Based on these facts, the Court views the conversion policy as being "established" and "maintained" by

---

[5] The Court notes that "establish" is defined in Black's Law Dictionary as: "1. To settle, make, or fix firmly; to enact permanently <one object of the Constitution was to establish justice>. 2. To make or form; to bring about or into existence <Congress has the power to establish Article III courts>." BLACK'S LAW DICTIONARY 586 (8th ed. 2004). In this case, it is clear that the employer created the right for Shelton to convert; however, Shelton actually established, or brought the conversion policy into existence, by exercising the right to convert. In this case, the question is whether ERISA preempts claims under the conversion policy, not whether ERISA governs the right to convert.

Shelton, not his employer.[6]  Accordingly, the conversion policy does not meet ERISA's definition of an "employee welfare benefit plan" and is not subject to ERISA preemption.

Further evidence that the "conversion policy" at issue is not subject to ERISA is found in the third prong of the Fifth Circuit's test, the Department of Labor's ("DOL") safe harbor provision.  The safe-harbor contains an additional four (4) factors to determine whether an insurance policy is subject to ERISA: (1) does the employer contribute to the plan; (2) is participation voluntary; (3) is the employer's role limited to collecting premiums and remitting them to the insurer; and (4) does the employer receive profit from the plan?  *Owens*, 285 F.Supp.2d at 781-82 (citing *McNeil*, 205 F.3d at 190)).

The Department of Labor's regulations are specifically relevant in this matter because Standard claims that *Owens* and *Demars* are factually distinguishable.  Again, Standard asserts that Shelton's conversion policy cannot be construed as an individual policy because he is insured under a "Rider to the Group Policy."  The DOL regulations state:

> Certain group or group-type insurance programs. For purposes of Title I of the Act and this chapter, the terms "employee welfare benefit plan" and "welfare plan" **shall not include a group or group-type insurance program** offered by an insurer to employees or members of an employee organization, under which
> (1) No contributions are made by an employer or employee organization;
> (2) Participation the program is completely voluntary for employees or members;
> (3) The sole functions of the employer or employee organization with respect to the program are, without endorsing the program, to permit the insurer to publicize

---

[6] The court in *Demars* also struggled with the issue of whether a conversion plan was "established or maintained by an employer."  The First Circuit bemoaned the circular caselaw and statutory definitions.  *Demars*, 173 F.3d at 445 (noting, "Demars's conversion policy was certainly 'established' in some sense by her former employer-but was it 'established' in the relevant sense? Case law provides no definitive answers. '[N]o single act in itself necessarily constitutes the establishment of the plan, fund, or program,'. . . and '[t]here is no authoritative checklist that can be consulted' to determine whether an employer's actions establish an ERISA plan.") (citations omitted).

> the program to employees or members, to collect premiums through payroll deductions or dues checkoffs and to remit them to the insurer; and
> (4) The employer or employee organization receives no consideration in the form of cash or otherwise in connection with the program, other than reasonable compensation, excluding any profit, for administrative services actually rendered in connection with payroll deductions or dues checkoffs.

29 C.F.R. § 2510.3-1(j) (emphasis added).

In light of the DOL's safe-harbor, Standard's assertion that *Owens* and *Demars* are distinguishable is unconvincing. Indeed, the fact that the DOL safe-harbor specifically exempts certain group insurance programs from ERISA's definition of an "employee welfare benefit plan" adds weight to Shelton's claim that his conversion policy is not subject to ERISA regulation. Stated another way, the undisputed fact that Shelton paid all premiums directly to Standard, as well as Shelton's voluntarily conversion, provide substantial evidence that the safe-harbor exempts Shelton's policy from ERISA.

Furthermore, a rigorous examination of Standard's opposition to Shelton's Motion for Partial Summary Judgment reveals that Standard's argument is adverse to the statutory text. A "rider" is "an attachment to some document, such as a legislative bill or an insurance policy, that amends or supplements the document." BLACK'S LAW DICTIONARY 586 (8th ed. 2004). The rider, or amendment, to the Group Policy in this case created a long-term disability policy for Shelton. Standard claims that Shelton should not be allowed to assert state law claims against the Rider to the Group Policy because it would subject the Group Policy to interpretation both under ERISA and state law. However, the Rider to the Group Policy covers only one (1) former employee: Shelton. As the court in *Ziperski v. First Unum Life Ins. Co.*, 2006 WL 217928, at *2 (S.D.N.Y. 2006) noted, "a former employee is only [an ERISA] 'participant' if she is eligible to receive a benefit 'from an employee benefit plan which covers **employees** of such employer.'"

*Ziperski,* 2006 WL 217928, at *2 (quoting 29 U.S.C.A. § 1002(7)).  Indeed, ERISA's text "suggests that the plan itself must cover current or current and former employees, rather than a single former employee, to qualify as an ERISA plan."[7]  *Id.*

In this case, Shelton has alleged that he has been solely responsible for remitting the premiums, his decision to buy the conversion policy was voluntary, the former employer had no duty to collect premiums, and there is no evidence that the defunct former employer received a profit from the plan.  Additionally, Standard has failed to provide evidence to the contrary.  Thus, the Court is convinced that the conversion policy is not an "employee welfare benefit plan" subject to ERISA.  Standard's claim that the plaintiff is insured under a rider to a group policy is not material to the determination because the DOL's safe-harbor applies to "group or group-type insurance program[s]."

Moreover, the Court finds that Standard's reliance on *Levine* is misplaced.  The *Levine,* court framed the issue by asking:

> does an individual conversion policy remain governed by ERISA merely because of its historical ties to an ERISA plan? If it does not, may a claim that involves a **conversion provision** in an ERISA policy nonetheless be considered related to the ERISA plan, or is it related to the conversion policy?

*Levine v. Transamerica Life Companies*, 2001 WL 333119 (E.D.La. April 5, 2001) (emphasis added).  Indeed, *Levine* is legally distinguishable from this matter because Levine's claim against Tenet concerned "**conversion rights** contained within an ERISA life insurance policy

---

[7] ERISA states, "The term 'participant' means any employee or former employee of an employer, or any member or former member of an employee organization, who is or may become eligible to receive a benefit of any type from an employee benefit plan which covers **employees** of such employer or members of such organization, or whose beneficiaries may be eligible to receive any such benefit."  29 U.S.C.A. § 1002(7) (emphasis added).

and to Tenet's duties under the ERISA plan." *Id.* at *5 (emphasis added).  Clearly, a suit regarding the right to a conversion policy is not the same as a suit to enforce the terms of an already obtained conversion policy.[8]  In addition, *Levine* relied on the Ninth Circuit's decision in *Greany v. Western Farm Bureau Life Insurance Co.*, 973 F.2d 812 (9th Cir. 1992) to support its conclusion.  Yet, the Ninth Circuit limited *Greany* in *Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 877 (9th Cir. 2001) (stating, "*Greany* held only that the conversion right, not the converted policy, was subject to ERISA.").  Therefore, *Waks*, not *Greany* is controlling law in the Ninth Circuit regarding preemption of conversion policies.  *Waks* specifically held:

> claims arising under a converted individual policy are not "related to" an ERISA plan for purposes of ERISA preemption. This conclusion is consistent not only with the words but also the purposes of the statute. A converted policy is created when an ERISA plan participant leaves the plan and obtains a new, separate, individual policy based on conversion rights contained in the ERISA plan. The contract under the converted policy is directly between the insurer and insured. It is independent of the ERISA plan and does not place any burdens on the plan administrator or the plan. There are also no relevant administrative actions by the employer.

*Waks v. Empire Blue Cross/Blue Shield*, 263 F.3d 872, 875-76 (9th Cir. 2001).

Based on the foregoing, the Court finds sufficient evidence to support Shelton's assertion that ERISA does not apply to his long-term disability policy.  In this case, the undisputed fact that Shelton paid the insurance premiums directly to Standard, the failure of the conversion LTD policy to satisfy the statutory definition of an "employee welfare benefit plan," and the safe harbor provision excluding certain group or group-type insurance programs, all combine to

---

[8] *See Ziperski v. First Unum Life Ins. Co.*, 2006 WL 217928, at * 3 (S.D.N.Y. 2006) (distinguishing *Glass v. United of Omaha Life Ins. Co.*, 33 F.3d 1341 (11th Cir.1994) and *Painter v. Golden Rule Ins. Co.*, 121 F.3d 436 (8th Cir.1997) as cases that considered the conversion right, not benefits under the conversion policy itself).

demonstrate that Shelton is entitled to judgment as a matter of law.

In addition, the Court finds Standard's form over substance argument unpersuasive. Standard's main argument – that the insurance policy was not issued directly to Shelton, but that a rider to the group policy provided him with coverage – does not undermine the Court's confidence that ERISA does not apply to the policy at issue. It is undisputed that the rider amended the group policy so that Shelton, a single former employee, was insured. The rider does not resemble an ERISA plan involving employees, participants, beneficiaries, employers, fiduciaries, and plan administrators. Thus, the rider created an insurance relationship outside the traditional ERISA context. Indeed, the rider created an insurance policy akin to an individual policy directly between insurer and insured because Shelton's employer had no involvement with the conversion policy following the termination of employment. The Court finds no reason to extend ERISA preemption beyond the bounds of the traditional ERISA context; thus, ERISA does not preempt Shelton's state law claims.[9]

## IV. CONCLUSION

Accordingly,

IT IS ORDERED that Shelton's Motion for Partial Summary Judgment is **GRANTED** (Rec. Doc. 18). The Court notes that this ruling removes one basis of federal subject matter jurisdiction (Federal Question). However, Standard removed this matter from state court based on diversity and federal question jurisdiction. The Court is satisfied that the amount in

---

[9] For completeness, the Court notes that Standard's objection to Shelton's claim of disability is a material fact in dispute in relation to the overall case. However, that contested fact is not material to the determination of whether ERISA preemption applies to Shelton's LTD policy. Fianlly, as the conversion policy is not subject to ERISA regulation, it would be inappropriate for Shelton to bring a claim under the statute.

controversy was greater than $75,000.00 on the date of removal.  Therefore, this Court retains subject matter jurisdiction over the controversy pursuant to diversity jurisdiction.

    New Orleans, Louisiana, this 14th day of May, 2008.

                                                HELEN G. BERRIGAN
                                                UNITED STATES DISTRICT JUDGE